IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE KNABB PARTNERSHIP, | : | |
| Petitioner, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 17-373 |
| | : | |
| HOME INCOME EQUITY, LLC, | : | |
| Respondent. | : | |

MCHUGH, J.                                                                                                       April 19, 2017

**MEMORANDUM**

This case arises out of a dispute between an architect, The Knabb Partnership (TKP), and a developer, Home Income Equity, LLC (HIE). According to TKP, HIE failed to compensate it for services rendered and made unauthorized use of its copyrighted architectural drawings. The matter was submitted to arbitration and an award was entered in TKP's favor. TKP now petitions to confirm that award, while HIE moves to vacate it on the grounds that the arbitrator demonstrated manifest disregard for the law. For the reasons set forth below, TKP's petition will be granted, and HIE's motion denied.

    I.       UNDERLYING FACTS

On September 26, 2008, HIE and TKP entered into an agreement whereby TKP agreed to design an 80-unit development that HIE planned to build in Brookhaven, Pennsylvania (the Brookhaven Project). TKP prepared architectural drawings in due course, which it copyrighted before submitting to HIE. HIE accepted these drawings without complaint but failed to pay TKP the agreed-upon fee. Moreover, HIE passed along TKP's drawings to a successor architect, Brett

1

Hand, and directed Hand to sign and affix his seal to drawings after removing any attribution to TKP.

TKP sued HIE for breach of contract, for interest and penalties under Pennsylvania's Contractor and Subcontractor Payment Act, and for copyright infringement under the Federal Copyright Act. Under the terms of TKP's contract with HIE (the Agreement), "any claim, dispute or other matter in question arising out of or related to this Agreement" was subject to arbitration. Dkt. 1 Ex. A at 7. Accordingly, TKP filed a demand for arbitration and the parties eventually chose Richard Lowe, Esq., a highly experienced and respected practitioner in his field, to resolve the dispute. Lowe held evidentiary hearings on December 19 and 20, 2016, during which both parties were represented by counsel and called witnesses. At Lowe's request, both parties submitted post-hearing briefs on January 6; closing arguments were held on January 9; and on January 17, the parties submitted a stipulated list of exhibits to be admitted into evidence. On January 23, Lowe issued a Partial Final Award in TKP's favor, ordering HIE to pay $401,402.79. This figure included $32,319.85 attributable to "predevelopment expenses" and $40,000 for "anticipated profits." Dkt. 1 Ex. D at 1. Lowe also permanently enjoined HIE from "using, relying upon, copying, preparing derivative works based upon, or otherwise infringing upon, directly or indirectly," the architectural drawings at issue. *Id.* at 2. Finally, Lowe awarded attorneys' fees and litigation costs to TKP as the prevailing party.

Before me now are TKP's Petition to Confirm Partial Final Arbitration Award and for Entry of Final Judgment, and HIE's Response in Opposition and Counter-Motion to Vacate, Modify, or Correct the Arbitration Award.[1]

---

[1] Although HIE's motion is labeled as a motion to vacate, modify, or correct the arbitrator's award, the only arguments in HIE's brief pertain to vacatur. Following HIE's lead, I will treat this as a motion to vacate, rather than a motion to modify, the award.

## II. STANDARD

Both TKP's petition and HIE's motion are governed by the Federal Arbitration Act, which provides that I "must," 9 U.S.C. § 9, confirm the award unless: (1) it "was procured by corruption, fraud, or undue means"; (2) "there was evident corruption in the arbitrator[]"; (3) the arbitrator was "guilty of . . . any . . . misbehavior by which the rights of any party have been prejudiced"; or (4) the arbitrator "exceeded [his] powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made," § 10. In addition to these four statutory grounds for vacating an arbitration award, some courts will also set aside an award when an arbitrator's actions amount to a "manifest disregard of the law."[2] It is on this fifth, common-law basis that HIE's motion to vacate rests.

Unlike an ordinary legal error—which is not grounds for vacatur—manifest disregard of the law occurs only when "it is evident from the record that the arbitrator knew the applicable law, and yet chose to ignore it." *Popkave v. John Hancock Distribs. LLC*, 768 F. Supp. 2d 785, 790 (E.D. Pa. 2011). "In determining an arbitrator's awareness of the law, [courts] impute only knowledge of governing law identified by the parties during arbitration." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003). The party seeking to vacate the award therefore "bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Id.* at 389.[3]

---

[2] *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (describing the "manifest disregard of the law" standard as "judicially created").

[3] *Duferco* was cited with approval in *Bellantuono v. ICAP Securities USA, LLC*, 557 F. App'x 168, 174 (3d Cir. 2014).

3

The Third Circuit first recognized manifest disregard of the law as grounds for vacating an arbitration award over thirty years ago.[4] More recently, however, the doctrine was called into doubt by *Hall Street Associates, L.L.C. v. Mattel, Inc.*, where the Supreme Court held that § 10 of the Federal Arbitration Act provided the "exclusive" grounds for vacating arbitration awards. 552 U.S. 576, 584 (2008). Since *Hall Street*, circuit courts have split on whether manifest disregard of the law remains a viable standard;[5] our Court of Appeals has noted the disagreement but has not yet taken a position. *See, e.g.*, *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120 (3d Cir. 2016) (whether the manifest disregard of the law standard survived *Hall Street* "is an open question"). I will therefore assume without deciding that manifest disregard of the law remains a viable basis for vacatur. Applying the Third Circuit's test pre-*Hall Street*, I find that HIE has not carried its heavy burden of proving that the arbitrator willfully ignored controlling law.

### III. DISCUSSION

HIE points to five decisions by Lowe, each of which, it argues, demonstrates manifest disregard for the law and independently justifies vacating the entire award. First, HIE claims that Lowe's award of $32,319.85 for predevelopment expenses contravenes an unambiguous term of HIE's Operating Agreement. Second, HIE claims that the portion of Lowe's award based on TKP's anticipated profit violates the Agreement's prohibition on consequential damages. Third, HIE claims that Lowe acted arbitrarily in awarding damages for copyright infringement because TKP never produced any evidence that its drawings contained "protectable

---

[4] *See Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 533 (3d Cir. 1985) ("An award may be set aside only in limited circumstances, for example, where the arbitrator's decision evidences manifest disregard for the law[.]")

[5] Manifest disregard of the law remains a viable basis for vacatur in the Second, Fourth, and Ninth Circuits, while the Fifth, Eighth, and Eleventh Circuits have abandoned the doctrine, citing *Hall Street*. *See Bellantuono*, 557 F. App'x at 173 & n.3 (summarizing cases).

expression" and therefore never demonstrated that HIE's (apparently conceded) plagiarism amounted to "wrongful copying." Dkt. 15 at 7–8. Fourth, HIE claims that Lowe erred in awarding copyright damages for two separate infringements of the same work. And fifth, HIE claims that Lowe lacked jurisdiction over TKP's copyright infringement claims because those claims fell outside the scope of the Agreement's arbitration clause.

HIE's third and fourth claims fail at the outset because HIE points to nothing in the record suggesting that Lowe considered and rejected the legal arguments about copyright infringement that it raises now. Indeed, HIE does not even allege in its supporting brief that it raised these arguments during arbitration. Because HIE bears the burden of demonstrating that Lowe knew of, and ignored, controlling law, this failure of proof is fatal.

According to TKP, HIE's first, second, and fifth claims should fail for the same reason. TKP's argument is not without force. HIE does not clearly state that it raised its first and second claims during arbitration, and while HIE now claims that it objected "numerous times" to Lowe's jurisdiction over the copyright claims, Dkt. 15 at 12, it offers no record evidence in support of this bald assertion. On the other hand, it appears that the contract documents that underpin HIE's first and second claims were introduced into the record during arbitration, affording Lowe the opportunity to review the clauses that HIE now invokes. And giving HIE every benefit of the doubt, I will accept as true its assertion that it raised jurisdictional objections during arbitration.

Proceeding to the merits, HIE's first claim concerns the $32,319.85 of the award that was based on "pre-development expenses" incurred by TKP prior to June 18, 2008, the date of HIE's Operating Agreement. HIE maintains that, under the terms of the Operating Agreement, it cannot be held liable for debts incurred by its members prior to the company's formation, except

under certain conditions that do not apply here. By nonetheless holding HIE liable for work performed before June 18, 2008, HIE claims that the arbitrator abrogated an unambiguous term of its Operating Agreement in clear violation of basic contract law principles.

In rebuttal, TKP points to extensive record evidence showing that Hal Lindsey, acting in his capacity as the sole shareholder of a company called Strategic Property Trust, agreed to pay TKP for predevelopment services on the Brookhaven Project.[6] According to TKP, this arrangement amounted to a deal between HIE and TKP since Lindsey is the President of HIE, Strategic Property Trust is an 80% owner of HIE and, according to HIE's general counsel, "you can't separate them" for purposes of seeking payment. Dkt. 19 Ex. B at 3 n.2. TKP also notes that during deposition testimony and again during the arbitration hearing, Lindsey appeared to concede that HIE owed TKP $32,319.85 for predevelopment services.[7] Finally, TKP argues that the relevant contract in this dispute is not the Operating Agreement, but rather the Agreement between HIE and TKP, of which § 1.5.1 expressly provides that compensation for TKP will include "Predevelopment Expenses: to be paid in full prior to the commencement of this Agreement." Dkt. 1 Ex. A at 10.

Because the parties directed Lowe to prepare a short-form award without a detailed explanation of his decision, Dkt. 19 Ex. A at 3, there is no explanation as to why Lowe awarded TKP damages for predevelopment expenses. Nevertheless, on this record, it is clear that Lowe's

---

[6] TKP's evidence of its arrangement with Strategic Property Trust includes minutes from a meeting between TKP and Strategic Property Trust in March 2005, invoices from TKP to Strategic Property Trust, and partial payment by Strategic Property Trust to TKP.

[7] Lindsey's relevant deposition testimony reads:
    Q. The bottom -- the end of the first paragraph it says, quote, the balance carried, including
    payments made, has been $32,319.85. Do you see that --
    A. I guess.
    Q. -- on the second page?
    A. I guess that's what we owe them.
Dkt. 19 Ex. B at 23–24. When Lindsey was confronted with his earlier testimony during arbitration, he again stated "I guess that's what we owe them." *Id.* at 29.

decision is not grounds for vacatur. Whether the award was based on a theory of veil-piercing, on Lindsey's apparent concession during his testimony, or on the terms of the Agreement between TKP and HIE, I cannot say that Lowe erred—let alone that he displayed a manifest disregard for the law—in ordering HIE to pay TKP $32,319.85 for predevelopment expenses.

HIE's second claim—that the award of $40,000 in anticipated profits constitutes an impermissible award of consequential damages—fares no better than its first. Although § 1.3.6 of the Agreement provides that the parties "waive consequential damages for claims, disputes or other matters . . . arising out of or relating to this Agreement," two other sections, 1.3.8.6 and 1.3.8.7, strongly suggest that this waiver does not apply to claims for anticipated profits. Dkt. 1 Ex. A at 7. As TKP notes, § 1.3.8.6 contains a termination provision which requires HIE, upon termination by TKP, to compensate TKP for "services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses." *Id.* at 9. Section 1.3.8.7 then explains that "Termination Expenses" include "an amount for the Architect's anticipated profit on the value of the services not performed by the architect." *Id.* In light of these additional provisions, I fail to see how Lowe demonstrated manifest disregard for the law by enforcing TKP's contractual right to anticipated profits.

Finally, HIE claims that Lowe lacked jurisdiction over TKP's claims for copyright infringement, which TKP disputes. Each party cites a single case in support of its position: TKP points to *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228 (2d Cir. 1982), for the proposition that Lowe had jurisdiction to its hear copyright claims, while HIE relies on *Desktop Images, Inc. v. Ames*, 929 F. Supp. 1339 (D. Colo. 1996), to argue the opposite. Central to the decisions in both *Kamakazi* and *Ames* was the language of the respective arbitration clauses. In upholding the arbitrator's exercise of jurisdiction over copyright claims, the *Kamakazi* court

7

stressed the breadth of the clause at issue, which provided that "any controversy or claim arising out of, or relating to this agreement or the subject matter thereof, or the breach hereof shall be settled by arbitration." 684 F.2d at 229, 231. In reaching the contrary conclusion, the *Ames* court stressed that the clause before it was narrower than the one in *Kamakazi*, mandating arbitration only in "any disputes or questions arising thereunder [(apparently meaning "under the contract")] including the construction or application of the Agreement." 929 F. Supp. 1339 at 1345.

The arbitration clause between TKP and HIE, while not identical to the clause in *Kamakazi* or in *Ames*, is closer to the former than the latter. As in *Kamakazi*, the clause here mandates arbitration over claims "arising out of or related to" the Agreement—a seemingly broader scope than the clause in *Ames*, which was restricted to claims arising *under* an agreement. Taking *Kamakazi* and *Ames* as guideposts, I cannot say that Lowe's exercise of jurisdiction over the copyright claims demonstrated a manifest disregard of the law. HIE's fifth and final claim therefore fails.

## IV. CONCLUSION

HIE has failed to demonstrate that Lowe acted with manifest disregard for the law. Its motion will be denied and TKP's petition will be granted. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge